In re Dana L. RAPINO, Debtor.

**INTERNATIONAL PLAYTEX, INC., Plaintiff,**

v.

**Dana L. RAPINO, Defendant.**

**Bankruptcy No. 180–07230–21.**

**Adv. No. 181–0092–21.**

United States Bankruptcy Court, E. D. New York.

June 9, 1981.

Charles R. Tropp, Staten Island, N. Y., for debtor-defendant.

Harvey H. Fein, Staten Island, N. Y., for plaintiff.

Rubin Ferziger, Brooklyn, N. Y., Chapter 7 Trustee.

### OPINION and ORDER

CECELIA H. GOETZ, Bankruptcy Judge:

Dana L. Rapino, the debtor herein, has moved to dismiss the complaint filed by International Playtex, Inc. ("Playtex") objecting to her discharge in bankruptcy. The grounds for her motion are that the complaint was filed late. Playtex filed its complaint on February 13, 1981 and filed an amended complaint on February 20, 1981. Accompanying the amended complaint was an application to extend the time for filing objections to her discharge. That application also is opposed by the debtor. Playtex is also moving to add Rubin Ferziger, Esq., the trustee in this Chapter 7 proceeding, as a defendant.

The procedural background to the present motion can be briefly stated. Dana L. Rapino filed a petition under Chapter 7 of the United States Bankruptcy Code[1] on November 21, 1980. Miss Rapino is currently employed as a salesperson at Star Pontiac. In response to the question as to whether or not she had been engaged in business during the six years preceding the filing of the petition herein, she answered as follows:

> "My father, Daniel Rapino, commenced a business known as 'Dana Wholesale Products' in Aug. 1975 and had my name

1. The Bankruptcy Reform Act of 1978, Pub.L. 95–598, 92 Stat. 2459 (Bankruptcy Code), was enacted on November 6, 1978 and is applicable to all bankruptcy cases commenced subsequent to September 30, 1979.

placed as the owner by filing a d/b/a certificate in my name in the County Clerk's Office. I had no interest in said business, but my father opened checking accounts in my name and I was directed to sign necessary checks. At the time the business was commenced, I was under the age of 18. I answered the telephone at the premises 1871 Victory Boulevard until Feb. 1977. I believe the business terminated in 1977."

The only unsecured creditor listed by Miss Rapino in her petition is Playtex. Her petition states that she owes Playtex $43,-025 on a judgment secured in the Supreme Court of the State of New York, Richmond County, in September, 1979 (Index No. 1346/76), for merchandise purchased by Dana Wholesale Products in 1976.

At the time the petition was filed, Charles R. Tropp, Esq., counsel for the debtor, sent Harvey H. Fein, Esq., who had represented Playtex in the proceeding resulting in the judgment against Miss Rapino, a brief form letter advising him that "the debtor has been granted an order for relief on a petition filed in the United States Bankruptcy Court, Eastern District of New York," and that all proceedings to enforce the collection of claims against the debtor's property had been stayed.

On December 11, 1980, the Court sent out notice of the filing of the petition; that a meeting of creditors pursuant to 11 U.S.C. § 341(a) would be held on December 30, 1980; and that February 6, 1981 had been fixed as the last day for filing objections to the discharge of the debtor or the dischargeability of a debt. This notice was sent to the address of Playtex shown on the petition, P.O. Box 631, Dover, Delaware 19901, and not to Mr. Fein. The notice was received by Playtex and forwarded to other counsel, Goldman, Horowitz & Cherno. This letter was lost somewhere in transit. The notice, therefore, was never received by either Goldman, Horowitz & Cherno or Harvey H. Fein, Esq.

No representative of Playtex was present at the first meeting of creditors held pursuant to 11 U.S.C. § 341. Rubin Ferziger,

Esq., the interim trustee appointed by the Court, interrogated Miss Rapino briefly concerning the business described in her petition, and concluded the meeting. When Mr. Fein, Playtex's attorney, subsequently endeavored to ascertain the status of the proceeding, he was erroneously advised by Mr. Ferziger that the § 341 meeting had not been held because the debtor and her attorney had not appeared.

Mr. Fein did learn from Mr. Tropp sometime before February 8, 1981 that this date was the last date fixed by the Court for filing a complaint opposing the debtor's discharge or the dischargeability of a debt.

On February 13, 1981, Playtex filed its complaint against Rapino opposing her discharge. The complaint recites that in April, 1976, Playtex sold and delivered to her merchandise in the value of $35,579.20; that at the time she represented herself to be the sole owner of Dana Wholesale Products; that no part of the $35,579.20 has been paid; that in the proceeding brought to recover this money, she testified that she was the sole owner of Dana Wholesale Products, and that her father was employed solely as a salesman; and claimed that the goods and merchandise delivered by Playtex in April, 1976 had been stolen. The complaint alleges that, in fact, the father had secured insurance on December 17, 1975 from Allstate Insurance Co., on which he collected $38,781.61 pursuant to a judgment entered in his favor on April 4, 1978, and that the property on which he recovered from Allstate was the property delivered to his daughter, the debtor. The complaint concludes that the recovery by the father, Daniel Rapino, from the insurance company for the loss of the goods and merchandise sold the daughter by Playtex defrauded Playtex, as well as other creditors of the debtor, if any.

Following the filing of an amended complaint on February 20, 1981, Mr. Fein applied for an extension of the time to file objections to discharge and requested that the trustee, Rubin Ferziger, be added as a party to the adversary proceeding. The Court did not sign the application to extend

the time to object to discharge on the ground that such relief was not available by *ex parte* application.

Subsequently, the debtor moved to dismiss the summons and complaint on the ground that it was "untimely filed pursuant to Bankruptcy Rules 712, 404 and 409." In essence, the debtor urges that Playtex has failed to demonstrate that its failure to file its complaint within the time fixed by the order of the Court was the result of "excusable neglect," and that, accordingly, no extension of that time should be allowed and its complaint should be dismissed.

### DISCUSSION

The sole purpose of the debtor in filing her petition for relief was to avoid the judgment secured by Playtex against her while she was doing business under the name of Dana Wholesale Products.[2] If the allegations of the complaint are accepted as true, as they must be at this stage, while Miss Rapino was representing herself to Playtex to be the sole owner of that business and refusing to pay for merchandise delivered to Dana Wholesale Products because it was stolen, her father, in a separate proceeding unbeknownst to Playtex, was collecting the insurance on this stolen merchandise for his own benefit.

This alleged fraud, however, is claimed to now be no longer open to examination because the Court fixed February 6, 1981 as the last day for filing of a complaint, and Playtex, due to a series of errors, did not file its complaint until February 13, 1981. Miss Rapino can show no prejudice from the late filing of the complaint, *i. e.*, nothing occurred between February 6 and February

13 that in any way changed or affected her legal position. Nevertheless, it is her position that the Court cannot, and should not, accept Playtex's complaint.

The issue thus raised is whether the Court should permit a complaint objecting to a debtor's discharge to be lodged after expiration of the time fixed by order of the Court for the initiation of such a proceeding where excusable neglect has not been demonstrated. Although the issue is a recurrent one in the bankruptcy courts, the principles to be applied are far from settled.

The new Bankruptcy Code, like its predecessor, the 1898 Bankruptcy Act, excepts certain debts from discharge (11 U.S.C. § 523) and also authorizes the denial of a discharge where certain circumstances are present (11 U.S.C. § 727).[3] Unlike the Act, however, the Code is silent respecting the time limits for objecting to the discharge of the debtor, or to particular debts of the debtor. Section 14(b)(1) of the Act (former 11 U.S.C. § 32(b)(1)) required the Court to fix a time for the filing of objections to discharge or to the dischargeability of debts not less than thirty days and not more than ninety days after the First Meeting of Creditors.

The vacuum in the Code respecting time limits is filled by Bankruptcy Rules 404 and 409.[4]

Paragraph (a) of Rule 404 directs the court to fix a time for the filing of a complaint objecting to the debtor's discharge, which time "shall be not less than 30 days nor more than 90 days after the first date set for the first meeting of creditors." Paragraph (b) requires that at least 30 days' notice be given creditors of this

---

2. The debtor's only other creditor is Chemical Bank which holds a mortgage on the debtor's boat. At the time the petition was filed, the debtor was current on her payments to Chemical Bank.

3. The provision in the Act paralleling 11 U.S.C. § 523 was § 17(a) (former 11 U.S.C. § 35(a)); the section similar to present 11 U.S.C. § 727 was § 14(c) (former 11 U.S.C. § 32(c)).

4. Both Rules are applicable to cases under the Bankruptcy Code. Rule 404 is made applicable

by Interim Rule 4002, except that the references in it to § 17(c) of the Act are to be read as references to § 727(a) of the Code. Rule 409 is adopted by Interim Rule 4003, except that the reference to § 17(c)(2) of the Act is to be read as a reference to § 523(c) of the Code. Both Interim Rules 4002 and 4003 have been adopted by the Eastern District of New York. Rule 1(b) of the Local Rules of the United States Bankruptcy Court for the Eastern District of New York for Practice Under the Bankruptcy Code (adopted January 1, 1981).

cut-off date. However, in a no-asset case, *i. e.,* where "notice of no dividend is given" creditors, the last day to object to the debtor's discharge can be fixed as early as the same date as is fixed for the first meeting of creditors, and only ten days' notice of this date need be given. Rule 409(a)(2), respecting complaints to the dischargeability of debts, parallels these provisions of Rule 404.

Since it is customary to combine the notice of the first meeting of creditors, the meeting held pursuant to 11 U.S.C. § 341, with the notice of the time limits for the filing of complaints objecting to discharge or to dischargeability, a creditor may have as little as ten days from the time he first receives notice that a petition in bankruptcy has been filed to prepare and file his complaint opposing discharge or dischargeability.

These short time periods are mitigated by the power given the Court in both Rules 404 and 409 to extend the time earlier fixed. Paragraph (c) of Rule 404 authorizes the court "for cause, on its own initiative or on application of any party in interest, [to] extend the time for filing a complaint objecting to discharge." Similar language is to be found in Rule 409(a)(2).

*Collier on Bankruptcy,* in its discussion of Rules 404 and 409, urges a liberal construction of this authority:

"Because of the importance which should be attached to encouraging interested parties to oppose a discharge where there is reasonable grounds to suspect that an objection exists, this discretionary power to extend the time for objections should be liberally construed." 1A *Collier on Bankruptcy* ¶ 14.06, p. 1274 (14th ed. 1978).

Several Courts of Appeal in cases arising under the Act have held that extensions of time should be liberally granted where the debtor was not prejudiced and substantial rights were involved. *Recile v. Ward,* 496 F.2d 675 (5th Cir. 1974), *mod.,* 503 F.2d 1374 (5th Cir. 1974); *In re Semel,* 427 F.2d 651, 653 (3d Cir. 1970); *In re Solomon,* 506 F.2d 463 (6th Cir. 1974); *In re Massa,* 133 F.2d 191 (2d Cir. 1943). *See also In re Hart,* 7 CBC 479 (B.C.D.N.J.1975).

In *Recile v. Ward, supra,* the Court of Appeals for the Fifth Circuit found no abuse of discretion in permitting objections to discharge to be filed two and a half years late. The court there said:

"Ample case law support the proposition that the provision conferring the referees' discretion to extend the time for filing extensions must be broadly read. In *In re Massa,* 2 Cir. 1943, 133 F.2d 191, the bankrupt attacked the referee's judgment refusing a discharge, arguing that the objections forming the basis of the refusal were filed out of time. The objections had been filed out of time, but the referee had allowed them to be filed and had proceeded to hold hearings on them. The Court of Appeals for the Second Circuit held that the referee's holding of the hearings and his acceptance of the objections were evidence that he had extended the time for filing the objections. In *Rameson Brothers v. Goggin,* 9 Cir. 1957, 241 F.2d 271, the Ninth Circuit held that technical errors in the papers granting an extension did not bar filing objections, because the referee could permit late filing of the papers, even without a formal extension. In *In re Wiedemeyer,* E.D.N.Y.1940, 32 F.Supp. 809, the court held that where the illness of the creditor's clerk had prevented the timely filing of an objection, but the discharge had not yet been granted, the referee could allow the papers to be filed out of time. See also *In re Legon,* S.D.N. Y.1949, 85 F.Supp. 946 (referee has discretion to extend time without filing a formal order granting an extension).

"In accordance with the principle that the power to extend the time for filing objections should be liberally construed, we hold that the referee was correct in his conclusion of law No. 1, that the Court has discretionary authority to extend the discharge date either before or after the expiration of the deadline originally set." 496 F.2d at 680–81.

However, the area for the operation of the Court's discretionary power would be severely curtailed if Rule 906 of the Rules of Bankruptcy Procedure,[5] the counterpart of FRCP 6(b), is deemed to be applicable to extensions of the times fixed by order of the Court under Rules 404 and 409. Rule 906(b), insofar as relevant, reads:

"(b) *Enlargement.* When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without application or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) upon application made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect * * *."

■ If Rule 906(b) applies, then where the original period expires, an extension of time may be given only where the plaintiff can demonstrate "excusable neglect." If "excusable neglect" cannot be demonstrated, no room is left for the exercise of the Court's discretion. The Note of the Advisory Committee to Rule 404 states somewhat cryptically:

"The time fixed by the court on this subdivision (a) [of Rule 404] may be enlarged as provided in subdivision (c) [of Rule 404] and Rule 906(b)."

*Collier on Bankruptcy* reads this comment as clearly limiting the court's power under Rule 404(c) to grant enlargements of time:

"The conferral of this discretionary power of Rule 404(c) is not an open-ended grant, for the Advisory Committee Note shows, its exercise must be in keeping with the limitations of Rule 906(b) on enlargement of time within which actions must be taken under an order or notice." 12 *Collier on Bankruptcy* ¶ 404.4 (14th ed. 1976).

The courts which have considered the matter under the Act and the Code are divided on the issue whether Rule 906(b) controls their exercise of discretion under Rules 404 and 409 and requires a demonstration of excusable neglect where the time originally fixed has expired. The greater number holds that Rule 906(b) does so limit their discretionary power. *In re Capshaw,* 423 F.Supp. 1388, 1390 (E.D.Va. 1977), *aff'd,* 611 F.2d 55 (4th Cir. 1979); *In re Breining,* 6 B.R. 837, 7 BCD 7 (Bkrtcy.S. D.N.Y.1980); *In re Rogers,* 2 B.R. 485 (Bkrtcy.W.D.Va.1979); *In re Murphy,* 1 B.R. 736 (Bkrtcy.S.D.Cal.1979); *In re Young,* 1 B.R. 387 (Bkrtcy.M.D.Tenn.1979); *In re Garchinsky,* 1 B.R. 203 (Bkrtcy.B.C.E. D.Pa.1979); *In re Gertz,* 1 B.R. 183 (Bkrtcy. C.D.Cal.1979); *In re Loveridge,* 3 BCD 1597 (B.C.D.Conn.1977); *In re Lee,* 18 CBC 136, 140 (E.D.Va.1978); *In re Hart, supra.* Some have mitigated the harshness of such an interpretation by treating excusable neglect as itself a flexible concept, requiring only a showing of "good faith by the party seeking enlargement, a reasonable basis for non-compliance within the specific period, and a lack of prejudice resulting to the opposing party." *In re Murphy, supra,* 1 B.R. at 738–39. *Accord: In re Hart, supra* (attorney's misunderstanding plus good faith justify extension); *In re Loveridge, supra* (office neglect warrants extension). The reasons generally given for holding Rule 906(b) to be applicable are: the importance of expedition in the administration of a bankruptcy case; the Advisory Committee's reference to Rule 906; and the fact that paragraph (c) of Rule 906, which deals with reductions in time, specifically exempts Rule 404(a), whereas no similar exclusion appears in paragraph (c), treating with extensions of time.

---

**5.** Bankruptcy Rule 906 applies in cases governed by the Bankruptcy Code pursuant to § 405(d) of the Bankruptcy Reform Act of 1978, Pub.L. 95–598. That section provides that the Bankruptcy Rules in effect on September 30, 1979 shall apply to cases commenced under Title 11 subsequent to September 30, 1979 to the extent not inconsistent with the provisions of the Bankruptcy Reform Act of 1978.

■ A minority view, and the one which this Court has taken, is that Rule 906(b) is inapplicable where an extension is requested under the specific language of Rules 404(c) or 409(a). *In re Koritz,* 2 B.R. 408, 413 (Bkrtcy.D.Mass.1979); *In re Pineford Development Co.,* 1 BCD 152 (B.C.N.D.Miss. 1974); *In re Roberts,* 3 CCH Bankr.L.Rep. ¶ 67,081 (B.C.N.D.Miss.1981); *In re Di Falco,* Bankruptcy No. 78–B–3074 (B.C.E.D. N.Y., April 19, 1979).

As already noted, the Court of Appeals for the Fifth Circuit, a court with enormous experience in bankruptcy matters, took a position in a case arising under the Bankruptcy Act inconsistent with the limitations of Rule 906(b). *Recile v. Ward, supra.* In the court's original opinion permitting a complaint to be filed two and a half years late, it brushed aside the debtor's reliance on FRCP 6(b), the counterpart of Rule 906(b), on the ground that the Federal Rules of Civil Procedure did not apply in bankruptcy. 496 F.2d at 682. In a subsequent *per curiam* opinion modifying its original decision, the Court of Appeals acknowledged the applicability of FRCP 6(b) and Rule 906(b), but held that neither affected the result reached. 503 F.2d at 1375.

■ It is a well-known rule of construction that where two statutory provisions apply, the more specific will govern. Thus, in *In re Di Falco,* this Court said:

"Insofar as Rule 906(b) is more restrictive than Rule 409(a)(2) and § 14b of the Act, the latter provisions which deal specifically with the extension of time to object to dischargeability, must be deemed controlling."

There are sound reasons for refusing to read Rule 906(b) as hobbling the discretionary authority of the bankruptcy court under Rules 404 and 409. As previously noted, in a no-asset case, a creditor may have as little as ten days from the time he first learns of a bankruptcy to file his complaint if he is to act within the original deadline set by the court. Even in a case where there are assets, the period may be as short as forty days from the time he first learns of the filing of a petition. These short deadlines can impose no hardship and work no injustice if the court has broad discretion to extend the time, whatever the reasons for failing to meet the court's deadline. However, if the court can act only where excusable neglect is shown, meritorious causes of action may well be sacrificed.

Rule 906(b) fits poorly with Rule 404 for other reasons. Many of the offenses which forfeit a right to discharge may not be known to the creditor at the time a petition is filed. Some offenses, for example, can occur only during the course of the bankruptcy proceeding itself. Thus, one of the grounds for objecting to a discharge is the making of a false oath or account in connection with the bankruptcy proceeding. 11 U.S.C. § 727(a)(4)(A). Why should a creditor, who has uncovered, perhaps through investigation, misconduct during the course of the bankruptcy proceeding be forced to carry the additional burden of demonstrating that his failure to discover the fraud earlier, or bring it to the attention of the bankruptcy court, was due to "excusable neglect"? This does not mean that the reasons for any delay are not pertinent in the decision as to whether the Court should exercise its discretion to allow the objection to the discharge to be filed, but that the presence or absence of excusable neglect should not be decisive, as it is made by Rule 906(b).

However, for purposes of the present case, it is unnecessary to resolve the conflict respecting whether Rule 906(b) limits Rule 404, although if it were, this Court would adhere to its previous interpretation.

■ Under Rule 906(b), it is only necessary to show excusable neglect after the period originally prescribed for filing has expired, in which case the application falls under 906(b)(2); if the period has not yet expired, the application comes under Rule 906(b)(1) and may be granted simply "for cause." Several courts have held that for purposes of Rule 906(b), "the period originally prescribed" within which the bankruptcy court may extend the time for filing, even in the absence of excusable neglect, is

the deadline fixed in Rule 404(a) itself, *i. e.*, ninety days from the date of the first meeting of creditors, and not that fixed in the order of the Court. *Keenan v. Builders Appliances, Inc.*, 384 F.Supp. 14 (E.D.Wis. 1974); *In re Murphy, supra. Accord: In re Jones,* 560 F.2d 775, 778 (7th Cir. 1977). The complaint in the instant proceeding was filed within ninety days of the first meeting of creditors. Accordingly, it falls under Rule 906(b)(1), not under Rule 906(b)(2), and cause existing for permitting it to be filed, the Court may receive it.

■ For purposes of this Opinion, the Court has assumed that excusable neglect is not present, but it has not so found. If that issue became critical, a hearing would appear to be necessary. In view of the loss in transit of the notice fixing discharge dates and the difficulty Playtex's counsel encountered in determining the status of the case, Rule 906(b)(2) may well be satisfied. *See Loveridge, supra.*

In the view of the Court, it would be inconsistent with justice to permit substantial rights to be snuffed out because a routine notice was misrouted. As noted earlier, the debtor has not been prejudiced. Fixing an earlier cut-off date than the ninety days allowed by the Rules was an arbitrary exercise of the Court's discretion, which it clearly should have the power to modify.

For the foregoing reasons, Playtex's application to extend its time to file its complaint is granted, and the debtor's motion to dismiss is denied.

Playtex is also given leave to add Rubin Ferziger, Esq., as a defendant.

SO ORDERED.